WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kevin Fuciarelli, | No. CV-14-01078-PHX-GMS |
| Plaintiff, | **NOTICE** |
| v. | |
| Aaron B. Good, et al., | |
| Defendants. | |

Pending before the Court is Plaintiff Kevin Fuciarelli's Renewed Motion for Judgment as a Matter of Law, (Doc. 244). Dr. Fuciarelli moves for a JMOL verdict only on the issue of whether "Defendants had reasonable suspicion to detain Plaintiff." (Doc. 244 at 1.) For the following reasons, the Court denies the Motion.[1]

## BACKGROUND

Dr. Fuciarelli brought suit against the City of Scottsdale and against Scottsdale Police Officers Aaron Good and Edward Chrisman, alleging unreasonable seizure and excessive force in violation of the Fourth Amendment as well as asserting state law negligence claims. The action arose out of an incident on March 10, 2013, in which Dr. Fuciarelli was detained and subsequently arrested by Officers Good and Chrisman. A jury found in favor of all Defendants on all counts.

---

[1] The Plaintiff has requested oral argument. That request is denied as the parties have thoroughly discussed the law and evidence, and oral argument will not aid the Court's decision. *See Lake at Las Vegas Inv'rs Grp., Inc. v. Pac. Malibu Dev. Corp.*, 933 F.2d 724, 729 (9th Cir. 1991).

A brief summary of the undisputed facts is as follows. Dr. Fuciarelli owns the building in which his medical practice is located and he leased a suite to Dr. Irwin Levey. Upon discovering that Dr. Levey was moving out while behind on rent, Dr. Fuciarelli initiated a commercial lockout. Within the leased suite was a set of keys for the car that Dr. Levey's wife, Sharon Levey, was driving that day.[2] Dr. Levey called 911 in an attempt to retrieve the keys.

Officer Chrisman responded to the scene and was told by Mrs. Levey that Dr. Fuciarelli would not let her get her keys from the suite. Officer Chrisman detained Dr. Fuciarelli while he determined if Dr. Fuciarelli could deny Mrs. Levey access to the keys. Officer Good continued the detention while Officer Chrisman returned to his patrol car to do legal research.

Dr. Fuciarelli argues that no reasonable jury could, on the evidence presented, have found that Officers Good and Chrisman had reasonable suspicion for detaining him. He therefore asks the Court for judgment as a matter of law on his unreasonable seizure claim against Officers Good and Chrisman.

**DISCUSSION**

**I.  Legal Standard**

Rule 50(a) for the Federal Rules of Civil Procedure provides that "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may resolve the issue against the party." Here, where the Court did not grant the Rule 50(a) motion, Rule 50(b) allows the moving party to "renew" their motion no later than 28 days after discharge of the jury.

The standard governing interpretation of the term "legally sufficient evidentiary

---

[2] Arizona community property law would normally have subjected Mrs. Levey's car keys to any commercial lien incurred by Dr. Levey. Nevertheless, the commercial lien arose from a lease on which Dr. Levey was the only signatory. With certain exceptions not relevant here, community property is not liable for any obligations arising from interests in real property that have not been entered into by both parties to the marriage. A.R.S. § 25-214(C).

- 2 -

basis" is analogous to a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) ("[T]he standard for granting summary judgment mirrors the standard for judgment as a matter of law, such that the inquiry under each is the same."). The moving party must therefore show the absence of a dispute of material fact and that they are entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51 (1986). A review of the entire record is required. *Reeves*, 530 U.S. at 150. But in so doing, "the court must draw all reasonable inferences in favor of the nonmoving party." *Id.*

The question, then, is whether there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Fisher v. City of San Jose*, 558 F.3d 1069, 1074 (9th Cir. 2009) (en banc) (internal quotation omitted). The standard is "extraordinarily deferential" and "is limited to whether there was any evidence to support the jury's verdict." *EEOC v. Go Daddy Software, Inc.*, 581 F.3d 951, 961–62 (9th Cir. 2009). The watchword is "manifest miscarriage of justice." *Janes v. Wal-Mart Stores, Inc.*, 279 F.3d 883, 888 (9th Cir. 2002).

## II. Analysis

"The reasonable suspicion standard 'is a less demanding standard than probable cause,' and merely requires 'a minimal level of objective justification.'" *Gallegos v. City of L.A.*, 308 F.3d 987, 990 (9th Cir. 2002) (quoting *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000)). "Reasonable suspicion is formed by 'specific, articulable facts which, together with objective and reasonable inferences, form the basis for suspecting that the particular person detained is engaged in criminal activity.'" *United States v. Lopez-Soto*, 205 F.3d 1101, 1105 (9th Cir. 2000) (quoting *United States v. Michael R.*, 90 F.3d 340, 346 (9th Cir. 1996)). To determine whether an officer had reasonable suspicion of criminal activity, courts look to the objective interpretation of facts of which the officer was subjectively aware. *See United States v. Magallon-Lopez*, 817 F.3d 671, 674 (9th Cir. 2016) ("The Fourth Amendment permits investigatory stops if the facts known to the officers established 'reasonable suspicion to believe that criminal activity may be

afoot.'"); *United States v. Montero-Camargo*, 208 F.3d 1122, 1129 (9th Cir. 2000) ("[R]easonable suspicion exists when an officer is aware of specific, articulable facts which, when considered with objective and reasonable inferences, form a basis for *particularized* suspicion.").

The Arizona theft statute provides in relevant part that "[a] person commits theft if, without lawful authority the person knowingly . . . controls property of another with the intent to deprive the other person of such property." A.R.S. § 13-1802(A)(1). Dr. Fuciarelli argues that the jury did not have a sufficient evidentiary basis to find that Officers Chrisman and Good had a reasonable suspicion that Dr. Fuciarelli was engaged in theft.

At trial, the jury received the following evidence: It was Dr. Levey that called 911. (Doc. 248 at 20.) The computer-aided-dispatch ("CAD"), displayed on both Officer Chrisman's and Officer Good's computers, indicated that Dr. Levey was the caller and that "his car keys" were locked in the suite. (Doc. 244-1 at 3.) However, both Officer Chrisman and Officer Good testified that they did not read this information off the CAD. (Doc. 244-2 at 12, Doc. 244-3 at 10–11, Doc. 244-6 at 10–11.)

Upon Officer Chrisman's arrival, Mrs. Levey told him that the car and the keys belonged to her, and that she was the tenant's wife. (Doc. 244-3 at 12–13.) She never indicated that Dr. Levey was a joint owner of the keys. (Doc. 244-4 at 33.) Officer Chrisman believed that Mrs. Levey was not herself a tenant, both because Mrs. Levey had told him she was not and because Dr. Fuciarelli had said he did not know who Mrs. Levey was. (Doc. 244-4 at 38.)

At this point, Officer Chrisman testified, he was investigating a possible criminal theft of keys.[3] (Doc. 244-4 at 12.) He was aware of the elements of theft under A.R.S.

---

[3] Dr. Fuciarelli notes in his Reply that "[i]ronically, the police report that Officer Chrisman prepared after this incident, and that supposedly summarizes his investigation, does not mention theft nor was Fuciarelli ever charged with theft." (Doc. 247 at 2.) This is, nevertheless, not dispositive of the reasonable suspicion issue for two reasons. First, the jury was entitled to weigh this evidence and any inferences proceeding from it against Officer Chrisman and Good's assertions that they were investigating a theft. Moreover, the "constitutional reasonableness" of an investigatory stop does not depend on the

- 4 -

§ 13-1802. (Doc. 244-4 at 31–32.) Though this was the first commercial lockout Officer Chrisman had even been on, (Doc. 244-4 at 36–37), and he only vaguely recalled being taught on landlord-tenant law at the police academy, (Doc. 244-4 at 7), Officer Chrisman testified that he knew certain aspects of commercial landlord tenant law that might be applicable. He knew that commercial landlords could lock tenants out. (Doc. 244-3 at 30.) He testified on examination by Plaintiff's counsel that he did not know that landlords had liens on tenant property, (Doc. 244-3 at 30), but testified on examination by Defendants' counsel that he did know that commercial landlords could withhold and keep the property of a tenant. (Doc. 244-4 at 37.) What he did not know was whether commercial landlords could withhold and keep the property of a non-tenant or a non-signatory to the lease. (Doc. 244-3 at 25, Doc. 244-4 at 37.)

Scottsdale Police Department Field Order 2301 speaks to this question, instructing officers that "Commercial Landlords have the right to have a lien on all personal property within the commercial property."[4] (Doc. 244-5 at 3.) But Officer Chrisman testified that he was not familiar with the specifics of Field Order 2301 until after the call. (Doc. 244-4 at 13.)

Officer Chrisman eventually requested that Officer Good remain with Dr. Fuciarelli while Officer Chrisman researched the law to determine whether Dr. Fuciarelli had lawful authority to withhold Mrs. Levey's keys. (Doc. 244-6 at 36.) At this point, Officer Good testified that he did not know specifically that there was a lockout going on. (Doc. 244-6 at 43.) He did, however, know that Mrs. Levey wanted what she described as "her" keys and that she was not a tenant, and that Dr. Fuciarelli refused to give her the keys. (Doc. 244-6 at 23, Doc. 244-7 at 6–7.)

---

"actual motivations of the individual officers involved." *Whren v. United States*, 517 U.S. 806, 813 (1996).

[4] The field order's description of the property subject to a commercial lien is broader than that found in state statute. *See* A.R.S. § 33-362 ("The landlord may seize for rent any personal property of his tenant found on the premises, but the property of any other person, although found on the premises, shall not be liable therefor."). The City of Scottsdale may have good reason for this difference, but, the Court need not look into it, because the Plaintiff does not ask for JMOL on his negligence claim.

- 5 -

It may be that because at least Officer Chrisman knew that a commercial lockout was going on, the better course would have been to leave the matter for civil resolution. Nevertheless, viewing the evidence in the light most favorable to the officers, Officers Chrisman and Good knew that Dr. Fuciarelli controlled the property of Mrs. Levey. They knew that for the time being, Fuciarelli refused to give that property back. A reasonable jury could thus find that there were specific, articulable facts that provided a basis for the officers to believe that Fuciarelli was (1) controlling Mrs. Levey's property[5] (2) with the intent to deprive her of it.

There is, of course, a third element necessary for the criminal offense of theft: that the one party's control of the other party's property was done without lawful authority. "Because probable cause must be evaluated from the perspective of 'prudent men, not legal technicians,' an officer need not have probable cause for every element of the offense" to make an arrest. *Gasho v. United States*, 39 F.3d 1420, 1428 (9th Cir. 1994). It would be illogical to place a higher bar on the reasonable suspicion necessary to justify a detention. Nevertheless, there was also an evidentiary basis by which a reasonable jury could find that Officer Chrisman had specific, articulable facts to suspect that Dr. Fuciarelli did not have lawful authority to hold Mrs. Levey's keys. Officer Chrisman testified that he did know of the potential lawful authority that would support Dr. Fuciarelli's actions; he knew that a commercial landlord could, during a commercial lockout, lawfully control the property of a tenant. But he also knew that Mrs. Levey was not a tenant.

As Officer Chrisman understood it, then, Dr. Fuciarelli's lawful authority did not explicitly extend to Mrs. Levey's property. He did not know with certainty that Dr. Fuciarelli's lawful authority did not so extend, but he had a reasonable basis for

---

[5] Dr. Fuciarelli points out that the CAD reported that Dr. Levey was the caller, and that it was "his" keys that were locked in the suite. But, viewing the facts in the light most favorable to Defendants, neither Officer Chrisman nor Officer Good read that information from the CAD. Even if the officers had read the CAD, a reasonable jury could find that Officers Chrisman and Good reasonably suspected otherwise based on Mrs. Levey's subsequent insistence that the keys belonged to her.

suspecting it did not. It is a practical world in which police officers assess reasonable suspicion. *See, e.g.*, *Heien v. North Carolina*, 135 S. Ct. 530, 536 (2014). Understanding that a commercial landlord could withhold a *tenant's* property, Officer Chrisman could reasonably suspect that a commercial landlord could not withhold a *non-tenant's* property.[6]

Taking the evidence in the light most favorable to the Defendants, then, Officers Chrisman and Good[7] had reasonable suspicion to detain Dr. Fuciarelli.

Dr. Fuciarelli seeks to return to the Court's order of August 30, 2016, which held that the officers had no reasonable suspicion to detain Fuciarelli. The Court reconsidered that portion of the order prior to trial to allow the question to go to the jury. (Doc. 182.) On summary judgment the parties both agreed that the CAD data available to Officers Chrisman and Good demonstrated that Dr. Levey, the landlord, had placed the call wanting his keys back. Defendants did not assert in opposition to summary judgment that neither Officer Chrisman nor Officer Good read these CAD readouts. Thus, there was no dispute of fact on summary judgment as to whether Officers Chrisman and Good were aware that the tenant, Dr. Levey was laying claim to the keys. At trial Officers Chrisman and Good claimed that they had not read their CAD screens and that the person who later turned out to be Mrs. Levey claimed the keys to be hers—and she claimed not to be a tenant. This testimony was backed up by the testimony of Mrs. Levey. Thus,

---

[6] Officer Chrisman was in fact correct in this conclusion but, given both the contours of Arizona community property law and the facts of this case, it took a number of legal technicians some time to ultimately figure this out as it pertained to the Leveys' community property under this lease to which only Dr. Levey was a party. That Officer Chrisman was proven correct, by itself, does not mean he had reasonable suspicion; but it does mean that the jury had a sufficient evidentiary basis to find that he had facts by which he reasonably interpreted a confusing statute. *Cf. Heien*, 135 S. Ct. at 542 (Kagan, J., concurring) ("The critical point is that the statute poses a quite difficult question of interpretation, and Sergeant Darisse's judgment, although overturned, had much to recommend it. I therefore agree with the Court that the traffic stop he conducted did not violate the Fourth Amendment.").

[7] The analysis of reasonable suspicion as to Officer Chrisman suffices to show that Officer Good had reasonable suspicion as well. *See United States v. Ramirez*, 473 F.3d 1026, 1037 (9th Cir. 2007) ("Where one officer knows facts constituting reasonable suspicion . . . and he communicates an appropriate order or request, another officer may conduct a warrantless stop . . . without violating the Fourth Amendment.").

there was a whole new question of fact at trial as to what the understanding of the officers was at the scene. All of this new evidence came in at trial, as well as the evidence that went to the nuanced question of whether, even if the keys were the community property of Dr. and Mrs. Levey, they were subject to any lien by Dr. Fuciarelli. As discussed above, the question is not whether there would have been a better course for the officers to follow in this instance, nor whether the officers acted wisely. The question is whether the jury was presented with sufficient evidence at trial to come to the conclusion that Officers Chrisman and Good had reasonable suspicion to detain Fuciarelli. The Court's reconsidered finding at the summary judgment stage does not change that.

**IT IS THEREFORE ORDERED** that Plaintiff's Renewed Motion for Judgment as a Matter of Law, (Doc. 244), is **DENIED**. The Clerk of Court is directed to enter judgment in favor of Defendants and terminate this action.

Dated this 31st day of May, 2017.

_____
Honorable G. Murray Snow
United States District Judge